UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Rafael Delacruz

    v.

United States of America

Civil No. 18-cv-811-LM
Opinion No. 2020 DNH 103

**O R D E R**

Petitioner, Rafael Delacruz, is serving a 144-month sentence on three counts of distribution of a controlled substance (heroin and fentanyl) in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C).  He is currently housed at the Strafford County House of Corrections in Dover, New Hampshire. Delacruz requests that this court grant him compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) based on the danger posed to his health by the combination of his underlying medical conditions and the threat of contracting COVID-19 while incarcerated.  The government concedes that Delacruz has exhausted his administrative remedies under the statute but objects to his release.  The court held a video hearing on Delacruz's motion on May 28, 2020, at which he and his step-daughter, Jaileen Irizzary, testified.

**STANDARD OF REVIEW**

A court may grant so-called "compassionate release" to a defendant under 18 U.S.C. § 3582(c)(1)(A).[1]  The statute provides, in relevant part, that:

> [T]he court, upon motion of the Director of the Bureau of Prisons or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> > (i)  extraordinary and compelling reasons warrant such a reduction
> >
> > . . .
> >
> > and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A); see also U.S.S.G. § 1B1.13 (sentencing guidelines policy statement on compassionate release).

---

[1] Compassionate release motions are typically filed in defendants' criminal cases.  Delacruz, however, filed the instant motion pro se in his civil proceeding under 28 U.S.C. § 2255.  This irregularity makes no legal difference to the court's analysis.  All references to "defendant" in this legal standard and elsewhere in this order apply equally to Delacruz.

Where, as here, a motion for compassionate release is
properly before the court, the court must determine if the
defendant is eligible for release.  A court may reduce a term of
imprisonment under the compassionate release provision if it:
(1) finds that extraordinary and compelling reasons warrant the
reduction; (2) finds that the defendant is not likely to be a
danger to the safety of any other person or the community; and
(3) considers the sentencing factors outlined in 18 U.S.C. §
3553(a).  See 18 U.S.C. § 3582(c)(1)(A); U.S.S.G. § 1B1.13; see
also United States v. Sapp, No. 14-CR-20520, 2020 WL 515935, at
*2 (E.D. Mich. Jan. 31, 2020); United States v. Willis, 382 F.
Supp. 3d 1185, 1187 (D.N.M. 2019).  The defendant has the burden
of showing that he is entitled to a sentence reduction.  United
States v. Ebbers, No. S402CR11443VEC, 2020 WL 91399, at *4
(S.D.N.Y. Jan. 8, 2020).  And the court has "broad discretion in
deciding whether to grant or deny a motion for sentence
reduction."  United States v. Paul Gileno, No. 3:19-CR-161-
(VAB)-1, 2020 WL 1307108, at *2 (D. Conn. Mar. 19, 2020)
(internal quotation marks omitted).

## BACKGROUND

In August 2017, Delacruz pleaded guilty to three counts of
distribution of a controlled substance (heroin and fentanyl) in
violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C).  United States

v. Rafael Delacruz, 16-cr-00121-LM, (D.N.H. Aug. 18, 2017)
("Delacruz I"), doc. no. 42 (plea agreement).  On December 1,
2017, the court sentenced Delacruz to 144 months of imprisonment
and six years of supervised release.  Delacruz I, doc. no. 48
(judgment).  In August 2018, Delacruz filed a motion to vacate
his sentence under 28 U.S.C. § 2255, raising several claims
including ineffective assistance of trial counsel.  See doc. no.
1.

On April 22, 2020, while his § 2255 motion was still
pending, Delacruz, acting pro se, filed the instant motion for
compassionate release under the docket number for his § 2255
proceeding.  Doc. no. 11.  Because Delacruz was represented by
counsel in the § 2255 proceeding, the court allowed counsel to
file a supplemental motion in support of Delacruz's pro se
motion for compassionate release.  Doc. no. 14.  The court held
a telephone status conference with counsel for both parties on
May 14, 2020.  The parties agreed that as of May 28, 2020,
Delacruz would exhaust his administrative remedies as required
under the compassionate release provision.  See doc. no. 16.
Consequently, the court held a video hearing on the merits of
Delacruz's compassionate release motion on that date.[2]

---

[2] Delacruz subsequently moved to voluntarily dismiss his §
2255 petition (doc. no. 22).  The court granted that request.
Endorsed Order (June 9, 2020).

**DISCUSSION**

The court addresses the three prongs of the compassionate release analysis separately below.

I.   Extraordinary and Compelling Reason

The court must first consider whether Delacruz has established an extraordinary and compelling basis for early release.  Delacruz argues that his history of asthma, hypertension, and several other underlying health conditions put him at a substantial risk of experiencing severe illness should he contract COVID-19.  He also avers that several inmates at Strafford County House of Corrections have tested positive for the virus.

The Commentary to the Sentencing Guidelines Policy Statement regarding compassionate release identifies four categories of "extraordinary and compelling reasons" that justify a sentence reduction: the defendant's medical condition; the defendant's age; the defendant's family circumstances; and a catchall category.  U.S.S.G. § 1B1.13, App. Note 1.  Under the policy statement, a medical condition constitutes an "extraordinary and compelling reason" if the defendant is suffering from a terminal illness, or has a serious physical or medical condition, cognitive impairment, or deteriorating

5

physical or mental health due to age "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13, App. Note 1(A)(i)-(ii).  The catchall category encompasses any "extraordinary and compelling reason other than, or in combination with" the defendant's medical condition, age, or family circumstances.  See U.S.S.G. § 1B1.13, App. Note 1(D).

In the context of the current pandemic, courts have held that a generalized risk of infection by the virus is not, by itself, sufficient to constitute an extraordinary and compelling reason warranting release.  See United States v. Ramirez, No. CR 17-10328-WGY, 2020 WL 2404858, at *3 (D. Mass. May 12, 2020) (collecting cases).  "On the other hand, a combination of health and age factors that put a prisoner at a substantially higher risk due to COVID-19 along with a documented risk of the disease in the facility where the prisoner is incarcerated may demonstrate extraordinary and compelling reasons to reduce the prisoner's sentence." United States v. Bischoff, No. 17-CR-196-JD, 2020 WL 2561423, at *2 (D.N.H. May 19, 2020) (collecting cases in support).

Hypertension and moderate to severe asthma are both health conditions that put an individual at higher risk for complications from COVID-19.  The Centers for Disease Control

6

and Prevention ("CDC") has recognized that people with either of these conditions fall within the high-risk population.[3] Likewise, many courts have recognized that both hypertension and asthma place individuals in the high-risk category and constitute extraordinary and compelling reasons supporting a prisoner's release during the current pandemic.  See, e.g., Harrell v. United States, No. CR 13-20198, 2020 WL 2768883, at *3 (E.D. Mich. May 28, 2020) (holding that even "well managed" hypertension in connection with other medical risk factors constitutes extraordinary and compelling reason); United States v. Jackson, No. 1:19-CR-00492 (RA), 2020 WL 2759601, at *2 (S.D.N.Y. May 26, 2020) (collecting cases holding that asthma and hypertension are compelling bases for compassionate release); United States v. Gileno, No. 3:19-CR-161-(VAB)-1, 2020 WL 1916773, at *3 (D. Conn. Apr. 20, 2020) (finding that "chronic asthma" put inmate at increased risk).

Delacruz has demonstrated that he suffers from hypertension and asthma.  Delacruz's Bureau of Prisons' ("BOP") medical records indicate that he has a current diagnosis of

---

[3] CDC, Groups at Higher Risk for Severe Illness, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html#serious-heart-conditions, (last visited June 8, 2020) (listing people with moderate to severe asthma and people with "serious heart conditions" including hypertension as being at high risk for severe illness from COVID-19).

hypertension.  Doc. no. 17-1 at 3, 17-4 at 5.  He takes several
medications to control this condition.  Doc. no. 17-4 at 8.  And
in both 2018 and 2019, BOP medical staff prescribed him
nitroglycerin tablets for chest pain that accompanied his
hypertension.  See doc. no. 17-2 at 5, 17-3 at 9.

Delacruz also has a history of asthma beginning in about
2012.  He testified that he was hospitalized twice for asthma
attacks—once in 2010 and once in 2012—and his BOP medical
records confirm that history.  See doc. no. 17-2 at 58, 63-64.
His BOP records further indicate that he was prescribed an
albuterol inhaler at some point in the past.  See doc. no. 17-3
at 11.  His step-daughter's testimony that he suffers from "bad
asthma" corroborates this evidence.  Although BOP records
indicate that Delacruz's asthma is in "remission," Delacruz
testified that he currently experiences asthma symptoms,
including fatigue, occasional shortness of breath, and excessive
coughing because he is not receiving proper treatment while at
the Strafford County House of Corrections.

The court need not determine just how severe Delacruz's
asthma is when properly treated.  Even assuming his asthma is
mild, that condition in combination with his hypertension make
him a high-risk inmate who is more likely to experience severe
illness from COVID-19 should he catch it.  See Harrell, 2020 WL

2768883, at *3 (finding extraordinary and compelling reason
supporting release because even assuming defendant's conditions
did not "independently and perfectly fit the definition of
severity, as outlined by the CDC, his conditions still
exacerbate each other, placing him in a much more vulnerable
position"); see also United States v. Hilow, No. 15-CR-170-JD,
2020 WL 2851086, at *4 (D.N.H. June 2, 2020) (finding
extraordinary and compelling reason based on defendant's
combination of chronic health issues, including mild asthma,
hypertension, high cholesterol, prediabetes, and borderline
obesity).  Additionally, Strafford County House of Corrections
has seen at least two detainees test positive for COVID-19 and
one positive staff member.[4]  These conditions considered together
serve as an extraordinary and compelling reason supporting
Delacruz's release.

II.  Dangerousness

     The court must next consider whether, if released, Delacruz
is likely to pose a danger to the safety of any other person or
the community.  See U.S.S.G. § 1B1.13(2); 18 U.S.C. § 3142(g).
Relevant factors include the nature of Delacruz's offense, his

---

     [4] Kyle Stucker, Foster's Daily Democrat, 2nd Strafford
County jail ICE detainee has coronavirus,
https://www.fosters.com/news/20200520/2nd-strafford-county-jail-
ice-detainee-has-coronavirus (last visited June 8, 2020).

history and characteristics, and the nature of the danger he
might pose to a specific person or the community at large.  See
18 U.S.C. § 3142(g).

The crimes for which Delacruz is currently incarcerated are
serious drug-trafficking offenses.  Delacruz pleaded guilty to
distributing heroin and fentanyl in three hand-to-hand sales to
two different confidential sources.  Delacruz I, doc. no. 42.
The danger posed by trafficking such potent controlled
substances is illustrated by the fact that law enforcement has
evidence showing that Delacruz may have supplied drugs that
ultimately resulted in the death of two individuals by suspected
drug overdose.  Delacruz I, doc. no. 44 at 5 (presentence
investigation report).

Further evidencing his dangerousness, Delacruz possessed a
firearm while engaged in drug distribution.  When officers
executed a warrant to search Delacruz's residence after his
arrest, they discovered a Ruger P95 9 mm handgun with a loaded
magazine.  Delacruz I, doc. no. 44 at 5-6.  Law enforcement
later determined that the firearm was stolen.  Delacruz I, doc.
no. 44 at 6.

Delacruz's federal drug offenses committed in 2015 and 2016
were not his first drug-trafficking convictions.  In 1996,
Delacruz was convicted of several state misdemeanor drug
offenses, including possession with intent to distribute heroin.

10

Delacruz I, doc. no. 44 at 8-9.  In 2001, Delacruz was convicted
of two state felony-level drug-trafficking offenses.  Delacruz
I, doc. no. 44 at 9-10.  The conduct underlying those state
convictions (distribution and possession with intent to
distribute heroin and cocaine) appears to be very similar to his
federal drug offenses.  Delacruz I, doc. no. 44 at 9-10.  Based
on those two prior felony-level drug-trafficking offenses, this
court sentenced Delacruz as a career offender.

    Delacruz's criminal history is troubling both because of
its escalating nature (e.g. misdemeanor drug charges to state
felony-level drug charges to federal drug distribution charges,
culminating in career offender status) and the failure of
Delacruz's sentences for these prior crimes to deter him from
engaging in further drug-trafficking activity.  The court also
notes that Delacruz does not appear to be "aging out" of
criminal activity.  He committed the federal drug-trafficking
offenses when he was 53 years old.  For all these reasons, the
court finds that Delacruz is likely to pose a danger to the
community if released.  This finding weighs heavily against his
release.


III. Sentencing Factors

    Finally, the court must consider whether a reduction in
Delacruz's sentence is consistent with the sentencing factors

outlined in 18 U.S.C. § 3553(a) to the extent they are applicable.  See 18 U.S.C. § 3582(c)(1)(A).  Specifically, the court will consider whether the § 3553(a) sentencing factors support a reduction in Delacruz's sentence, or, alternatively, whether they outweigh any "extraordinary and compelling reasons" supporting release and compel denial of the motion.  See, e.g., United States v. Webster, No. 3:91CR138 (DJN), 2020 WL 618828, at *6 (E.D. Va. Feb. 10, 2020); Ebbers, 2020 WL 91399, at *7.

Because Delacruz has hypertension and asthma that place him at high risk for severe illness or death should he contract COVID-19, he has established an extraordinary and compelling reason supporting his release.  The court finds, however, that consideration of the sentencing factors outweighs that reason in this case.

First, as discussed in detail above, Delacruz is likely to pose a danger to the community if released.  Indeed, his criminal history demonstrates that he has continued to engage in criminal activity over the course of his life despite multiple convictions and periods of incarceration.  Thus, requiring Delacruz to serve the remainder of his sentence is consistent with the goals of "afford[ing] adequate deterrence to criminal conduct" and "protect[ing] the public from further crimes of the defendant."  18 U.S.C. § 3553(a)(2)(B)-(C).

Second, the court finds that reducing Delacruz's sentence
would not be consistent with the sentencing factors because he
has only served approximately half of his 12-year sentence.  In
evaluating whether reducing a defendant's sentence is consistent
with the § 3553(a) sentencing factors, a district court may
consider how much of defendant's sentence he has already served.
See United States v. Kincaid, 802 F. App'x 187, 188 (6th Cir.
2020); United States v. Chambliss, 948 F.3d 691, 694 (5th Cir.
2020).  For example, in Chambliss, the Fifth Circuit affirmed
the district court's denial of compassionate release where the
district court relied heavily on the fact that the defendant had
served only 14 years of his 30-year sentence.  Chambliss, 948
F.3d at 694.  The district court reasoned that, even though
defendant would not pose a danger if released and his terminal
illness qualified as an extraordinary and compelling reason,
releasing defendant after he served less than half of his
lengthy sentence would minimize the impact and seriousness of
his offense.  Id.  The Fifth Circuit affirmed that reasoning as
an appropriate use of discretion.  Id.

Here, Delacruz's projected release date is September 12,
2026.  He has therefore served about half of his 12-year
sentence.  Given the nature of his crimes and the time he has
left to serve, the court finds that a reduction of his sentence
to time served would minimize the impact and seriousness of his

offenses.  Put differently, the court finds that requiring
Delacruz to serve the remainder of his sentence would "reflect
the seriousness of the offense" and "provide just punishment."
18 U.S.C. § 3553(a)(2)(A).

This is especially true because Delacruz was already the
beneficiary of a substantial downward variance.  At his
sentencing, the court stated, and the parties agreed, that
Delacruz's guidelines sentencing range was 188 to 235 months.
Delacruz I, doc. no. 54 at 19-20 (sentencing transcript).  The
court, however, varied downward to a sentence of 144 months to
honor the parties' stipulation to that sentence in the plea
agreement.  Delacruz I, doc. no. 54 at 26-27.  Given that
Delacruz has six years remaining on his already reduced
sentence, a further reduction in his sentence is not warranted
in light of the § 3553(a) factors.  See Chambliss, 948 F.3d at
694; see also United States v. Mackenzie, ___ F. Supp. 3d ___,
2020 WL 2104786, at *3 (D. Mass. May 1, 2020) (denying
compassionate release in part because defendant had 40 months
left to serve on an 144-month sentence); United States v.
Butler, No. 19 CR. 834-10 (PAE), 2020 WL 1689778, at *3
(S.D.N.Y. Apr. 7, 2020) (denying compassionate release because
releasing defendant when he had served only 15 months of a 60-
month sentence would "disserve" the § 3553(a) factors).

14

In sum, the court finds that a consideration of the §
3553(a) factors outweighs Delacruz's extraordinary and
compelling reason and compels a denial of his request for
compassionate release.


IV.   Recommendation to BOP for Home Confinement

As an alternative form of relief, Delacruz's motion appears
to request that he be placed on home confinement for the
remainder of this sentence under 18 U.S.C. § 3624(c) as modified
by the CARES Act § 12003(b)(2).  The court does not have the
authority to order home confinement under § 3624, even as
modified by the CARES Act; only BOP has that authority.  See 18
U.S.C. §§ 3621(b), 3624(c)(2); Tapia v. United States, 564 U.S.
319, 331 (2011).  The court may, however, make a judicial
recommendation to BOP for home confinement.  See 18 U.S.C. §
3621(b)(4); United States v. Best, No. 5:16-CR-236-FL, 2019 WL
5608856, at *1 (E.D.N.C. Oct. 30, 2019).  Construing Delacruz's
request as one for a judicial recommendation that BOP release
him to home confinement, the court denies that request for the
same reasons it has denied Delacruz's motion for compassionate
release.

### CONCLUSION

For the foregoing reasons, the court denies with prejudice Delacruz's motion for compassionate release (doc. no. 11).  The court directs the Clerk's Office to docket a copy of this order in Delacruz's criminal case, Delacruz I, 16-cr-00121-LM.  In accordance with this order, the court directs the Clerk's Office to close the case.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

June 17, 2020

cc:  Counsel of Record.